**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

FRANK A. SPENCER,                                    Case No. 1:11-cv-142

            Plaintiff,                              Spiegel, J.
                                                     Bowman, M.J.

      v.

ODRC DIRECTOR ERNIE MOORE, et al.,

            Defendants.

### REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se*, filed this civil rights action under 42 U.S.C. §1983 against the Ohio Department of Rehabilitation and Correction ("ODRC") Director Ernie Moore, Southern Ohio Correctional Facility ("SOCF") Warden Donnie Morgan, and SOCF Corrections Officers Dawn Tackett, Melissa Campbell, John Toland, Josh Maynard, and Shawn Stevens. Upon initial screening pursuant to 28 U.S.C. §1915, Plaintiff's claims against Defendants ODRC Director Moore and SOCF Warden Morgan were dismissed for failure to state a claim for relief under §1983. (Docs. 5, 8). However, Plaintiff's allegations against Defendants Tackett, Campbell, Toland, Maynard, and Stevens were construed as asserting a claim of excessive use of force in violation of the Eighth Amendment, and were permitted to proceed through discovery. (*Id.*).

Discovery has now closed, and all remaining Defendants have filed a motion for summary judgment, to which Plaintiff has filed a response, and Defendants, a reply. (Docs. 27, 30, 32). Pursuant to local practice, Defendants' motion has been referred to the undersigned for initial consideration and a report and recommendation. *See* 28 U.S.C.

§636(b).  I now recommend that Defendants' motion be granted in part and denied in part.

## I.  Factual Background

Plaintiff is presently incarcerated at the Toledo Correctional Institution in Toledo, Ohio, but his claims stem from his prior incarceration at the Southern Ohio Correctional Facility, a maximum security prison operated by the Ohio Department of Rehabilitation and Correction.  In his complaint, Plaintiff alleges that on September 29, 2010, while at SOCF, he was handcuffed and being escorted by Defendants Tackett and Maynard, along with several other inmates.

During the time the inmates were being escorted, corrections officers received information that one or more of the inmates had passed an object between them.  Officers Tackett and Toland directed the inmates to stop along the wall in order to subject them to a pat-down search.  At that point in time, the parties' versions of the events begin to diverge but Plaintiff's version is assumed to be true for purposes of the pending motion.

Both parties agree that Defendant Tackett ordered Plaintiff to slide his feet back away from the wall in order to assume a position subject to search.  Plaintiff alleges that he told Defendant Tackett that it was impossible for him to physically comply with her order to slide his feet all the way back to the "yellow line" marked on the floor of the hallway.[1] Plaintiff testified at an administrative hearing that the place at which he was stopped leaning against the wall had a window well, which created a physical distance between the wall and the yellow line greater than other areas of the wall, and resulted in it being

---

[1] Defendants explain that hallways at SOCF have yellow lines painted on the floor just inside the walls.  Inmates are required to walk within the yellow lines when moving to and from places within SOCF. See Doc. 27-2, Exh. A at 2.

physically impossible for his legs to extend the distance requested.  (Doc. 27-15, Exh. H at 2-4).  Defendant Tackett confirms that Plaintiff told her he could not (as opposed to would not) comply with her order, but she alleges that Plaintiff "refused" to comply in a manner that was verbally abusive and full of profanity.

While the tone and precise words used by Plaintiff are disputed, the fact that he did not comply with the order is not disputed.  Also undisputed is the fact that Defendant Tackett touched Plaintiff's foot with her own while directing him to slide his feet back further.  Defendant alleges that the foot contact was incidental to the pat-down search. Plaintiff alleges that Defendant Tackett kicked his left foot in an attempt to knock him over, and additionally alleges that she pushed him in the back.  (Doc. 3 at 6, unmarked para. 8).[2] The parties agree that Tackett next handcuffed Plaintiff and radioed a supervisor, telling him that she had an inmate refusing a pat-down, and then proceeded to escort Plaintiff to a segregation area.

En route,  Tackett alleges that Plaintiff continued to use profanity and was walking too fast, so she instructed him to slow down.  Plaintiff alleges that he was walking at a "normal" pace, but does not dispute that he continued walking at the same pace.  Officer Tackett asserts that after Plaintiff initially refused to comply with her order to slow, he abruptly stopped, spun around, pushed his body weight against Defendant Tackett, and attempted to head-butt her.  (Doc. 27-2, Exhibit A at 2).  Plaintiff does not admit that he stopped and attempted to head-butt Tackett.  Instead, Plaintiff alleges that Tackett suddenly grabbed Plaintiff's handcuffs, took him to the ground, punched him in the face,

---

[2]As Defendants point out, in several accounts of the incident, Plaintiff does not mention Defendant Tackett's first alleged push to his back.

3

and struck him in the head three to four times with her "PR 24" (a type of baton or nightstick) causing his head "to bust open and bleed."[3]  Defendants Maynard and Tackett both state that it was Maynard and not Tackett who, after witnessing Plaintiff "leaning against Officer Tackett as if he was attempting to push her against the wall or down on the floor," took Plaintiff to the ground.  (*See* Doc. 27-4, Ex. B at 2).

Another witness, Officer Skaggs, reported on a contemporaneous incident report that Maynard took Plaintiff to the floor after Skaggs saw Plaintiff "spin in an aggressive manner toward Officer Tackett" and begin "to struggle with Officer Tackett."  (Doc. 27-13 at 11).  Defendant Maynard did not see the alleged attempt by Plaintiff to head-strike Tackett, nor did he observe Tackett twisting Plaintiff's handcuffs.  (Doc. 27-4 at Interrogatory 9).  Plaintiff alleges in his complaint that over the next five minutes Defendants Campbell, Toland, Maynard, and Stevens began kicking, punching, and kneeing Plaintiff, until a lieutenant appeared on the scene.

After the lieutenant appeared, Plaintiff was taken to the medical department for treatment.  The Medical Exam Report notes a "[s]mall superficial cut top of head abrasion right lateral wrist area and right upper lip bleeding controlled left thumb pain and swelling no deformity."  (Doc. 27-13, Ex. G at 26).  The cut on Plaintiff's head was approximately one-quarter inch in size, required no stitches or glue to close it, and stopped bleeding with application of simple direct pressure.  No swelling or bruising of the scalp or skull was visible.  (Doc. 27-21, Ex. N at 2).

Plaintiff was issued a Conduct Report and charged with several violations relating

---

[3]As Defendants note, there is some variation in Plaintiff's recall in terms of the number of times Plaintiff asserts he was struck with the PR 24.

4

to the incident.  After a disciplinary hearing, he was found guilty of a Rule 20 violation (physical resistance to a direct order) and a Rule 26 violation (disrespect to an officer), but was not found guilty of the Rule 61 violation (a violation of any published institutional rules, regulations, or procedures) with which he was also charged.  Although an attempt to head strike a correctional officer would have been in violation of Rule 4 (attempting to cause physical harm to another), he was not charged with that violation. (Doc. 27-2, Ex. A at 4).

Plaintiff's complaint asserts claims against each Defendant in his or her "official capacity and individual capacity." (Doc. 3 at 5).  As compensation for his claims, Plaintiff seeks a declaratory judgment that the Defendants violated his Eighth Amendment rights, $200,000 from each Defendant, $300,000 in compensatory damages, and $5,000,000 in punitive damages against each individual Defendant.  Plaintiff additionally seeks all other relief "the Court deems just & proper" including "freedom from prison."  (Doc. 3 at 10).

## II. Analysis of Defendants' Motion

### A. Summary Judgment Standard

In a motion for summary judgment, a court "must view 'the facts and any inferences that can be drawn from those facts, in the light most favorable to the nonmoving party.'" *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c) (internal quotation marks omitted). "Weighing of the

5

evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the non-moving party, however, does not mean that the court must find a factual dispute where record evidence contradicts wholly unsupported allegations.  After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586-87.  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S. Ct. 2505 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S. Ct. at 1356, inferences are not to be drawn out of thin air.  Rather, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586-587 (internal quotation and citations omitted).  As discussed below, there is no genuine issue as to any material fact and Defendants are entitled to partial summary judgment on the record presented on a portion of Plaintiff's claims.  However, issues of material fact prevent judgment from being entered on Plaintiff's Eighth Amendment claims.

### B.  Defendants' Arguments

#### 1.  Official Capacity/Eleventh Amendment Immunity

Defendants are entitled to judgment as a matter of law to the extent that Plaintiff seeks compensatory, punitive, or other types of monetary damages against Defendants in their official capacities, because such claims clearly are barred by the doctrine of sovereign immunity under the Eleventh Amendment.  *See generally Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008).  SOCF is a facility within the Ohio Department of Rehabilitation and Corrections, which is an instrumentality of the state of Ohio to which Eleventh Amendment immunity attaches.  *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).  A suit brought against a state official in his or her official capacity is effectively a suit against the official's office, equivalent to a suit against the state itself.  *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989); *Wolfel v. Morris*, 972 F.2d 712, 718-719 (6th Cir. 1992).  The State of Ohio has not waived the sovereign immunity to which it is entitled, nor has it consented to suit on Plaintiff's claims in this case.  *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).  Thus, to the extent that Plaintiff has attempted to sue Defendants in their official capacities, his claims should be dismissed and judgment granted as a matter of law in favor of the Defendants, because Plaintiff fails to state any

7

claim upon which relief can be granted, and the Defendants are immune from the monetary damages that Plaintiff seeks.

### 2.  Individual Capacity Claims Against Each Defendant

Having concluded that all claims against Defendants in their official capacities should be dismissed, the Court turns now to the claims against Defendants in their individual capacities.

### a.  Qualified Immunity

All Defendants assert that they are entitled to qualified immunity on all claims brought against them in their individual capacities. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The purpose of qualified immunity is to provide governmental officials with the ability to reasonably "anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 3042 (1987) (internal quotation omitted).  Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.   A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223,129 S.Ct. 808 (2009).

When a defendant moves for summary judgment based on qualified immunity, the official must first show that he/she acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).  Once an official makes this showing, the

burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right. *Id*. In this case, Plaintiff has made no claim that Defendants were acting outside their authority, so the burden falls on Plaintiff to overcome the qualified immunity defense.

Defendants argue that "[t]here is no constitutional right of a prison inmate to misbehave by attacking a corrections officer and then expect to be free from the very reasonable and necessary force that is brought to bear against him in order to restrain him and restore order." (Doc. 27 at 19). While Defendants' statement of the law is valid, it is also true that a prison inmate has a clearly established right to be free from the use of excessive force under the Eighth Amendment. Based upon the latter principle, it is often difficult for corrections officers involved in a violent altercation to obtain summary judgment on a prisoner's excessive force claim, particularly where material facts are disputed.

Of course, stating that something is difficult is not intended to suggest that it is impossible. Defendants rely on *Green v. Bauer*, Case No. 1:08-cv-249-SSB, 2010 WL 1610333 (S.D. Ohio, R&R March 24, 2010), adopted at 2010 WL 1610929 (S.D. Ohio April 20, 2010), an unpublished case from this Court wherein summary judgment was granted to corrections officers at SOCF where the medical evidence indicated "no injuries sustained" and the Court reasoned that it was "axiomatic that Defendants could not repeatedly strike Plaintiff without sustaining some injury to their hands nor could Plaintiff escape injury." *Id.* at *6. The Court reasoned that, even "when viewed in the light most favorable to Plaintiff," the evidence "indicates that Defendants' use of force was both minimal and reasonably related to bringing an unruly inmate under control" such that the

9

"*de minimis* use of force does not support an Eighth Amendment claim." *Id.* at 7.

Defendant Tackett's alleged "shove" or hand on Plaintiff's back, as well as any contact that her foot made with Plaintiff's feet at the initial stop in L corridor for purpose of conducting a pat-down search, constitutes the same type of minimal and reasonable contact relating to bringing an unruly inmate under control; therefore, summary judgment is appropriate as to that initial contact. Plaintiff claims no injury at all from that first contact by Officer Tackett, clearly intended to ensure that a reluctant inmate was compliant with her directive to submit to a search. *See Hudson v. McMillian,* 503 U.S. at 9 (quoting *Johnson v. Glick*, 481 F.2d at 1033 for the general proposition that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

Certainly, if the remaining evidence were viewed in Defendants' favor, all Defendants would be entitled to qualified immunity on all other claims in this case as well. Defendants repeatedly describe Plaintiff's allegations "that Officer Tackett, without provocation, threw him to the ground by twisting his handcuffs around his wrists, and then falling to the ground with him where she began punching him in the face several times and then striking him with her PR-24 baton" as "preposterous." (*See* Doc. 27 at 21). They maintain that the only force they used was both reasonable and necessary. Defendants point out that none of the Defendants has ever been disciplined for excessive force, harassment, or inappropriate supervision against any inmate, and that all of them have many years of experience. By contrast, in a four-year period of incarceration, Inmate Spencer has received sixty-two Conduct Reports, with numerous problems relating to his dealings with female corrections officers. (Doc. 27 at 6, citing Doc. 27-12, Exhibit F at 2).

10

However, on summary judgment, this Court must view the facts in *Plaintiff's* favor - at least to the extent that there are disputed issues of material fact.  Here, importantly, Plaintiff does not concede that he initiated the physical altercation by taking aggressive action against Tackett in the hallway by turning to head butt her after she ordered him to slow his gait.  Instead, under Plaintiff's version of the events, Defendants participated in an unprovoked attack upon him, allegedly initiated by Defendant Tackett in retaliation for his insolence.  In response to Defendants' motion for summary judgment, Plaintiff has submitted the affidavit of a fellow inmate, Eddie Wynn, dated October 26, 2011.  Mr. Wynn's affidavit largely corroborates Plaintiff's account, and alleges that Mr. Wynn saw Defendant Tackett twist Plaintiff's handcuffs, causing him to stumble; that Defendant Maynard assisted in taking Plaintiff to the floor; and that all of the remaining Defendants (Tackett, Maynard, Campbell, Toland, and Stevens) participated in punching and/or kicking Plaintiff while he was down.  (Doc. 30-1).

Based on the evidence submitted in support of their motion for summary judgment, Defendants suggest that no rational trier of fact could credit *any* portion of Plaintiff's account that the other Defendant officers punched or kicked him at any time, or that Tackett struck him with her PR 24.  Defendants note that the medical examination of Plaintiff immediately after the incident reflected only minor injuries, and that the small cut on Plaintiff's head (according to an affidavit by the nurse) was inconsistent with having been struck with a PR 24.[4]

Based upon the record as a whole, the Court agrees that summary judgment should

---

[4]Plaintiff counters that the location of the cut on the top of his head is equally inconsistent with having struck his head during his fall.

11

be granted to Defendants Toland, Campbell, and Stevens.  However, the Court disagrees that summary judgment is appropriate on Plaintiff's Eighth Amendment claims against Defendants Tackett and Maynard based upon Defendants' evidence alone.  While Defendants urge this Court to discredit entirely the evidence submitted by Plaintiff, issues of credibility are generally inappropriate to resolve on summary judgment.

Judgment in favor of Toland, Campbell and Stevens is appropriate chiefly because, while issues of credibility are *generally* not resolvable on summary judgment, Plaintiff's allegations against these three Defendants in particular are so "blatantly contradicted by the record...that no reasonable jury could believe [them]," *Scott v. Harris*, 550 U.S. 372, 380 (2007).  For example, Plaintiff alleges in his complaint that Correctional Officer Toland began "kicking me to the side of my body and punching me" after Plaintiff was lying on the floor.  (Doc. 3 at 8).  Wynn's affidavit also includes an allegation that Defendant Toland "kicked inmate Spencer to the right side of his lower body then went back into L-corridor" once Lt. Moore arrived.  (Doc. 30-1).  However, contemporaneous incident reports, Plaintiff's initial testimony at his disciplinary hearing, and evidence produced during discovery, all provide solid evidence that Defendant Toland remained in L Corridor to escort other inmates back to their cell block.  (*See, e.g.,* Doc. 27-2 Ex. A at 5; Doc. 27-15, Exh. H at 2).  Wynn's account that Toland rushed in to join the melee then hurriedly returned to L-corridor, apparently without being observed by anyone else (and having left the inmates he was in charge of un-escorted), strains credibility beyond the breaking point. Most convincing to the Court is the fact that Plaintiff called Officer Toland as a witness on his behalf at the disciplinary hearing where Plaintiff made no allegations against Officer

12

Toland at that time.[5]

For similar reasons, judgment should be granted to Defendants Campbell and Stevens. Again, notwithstanding the allegations that Defendant Melissa Campbell "started kicking me to the groin and buttocks" and that Defendant Stevens "started punching me to my lower part of my back," (Doc. 3 at 8), all witnesses' contemporaneous "use of force" and incident reports reflect that those two officers were minimally involved. Plaintiff's medical examination documented no complaints of injuries to his groin or back, or evidence of such injuries, at all. (Doc. 27-13, Ex. G at 26). Plaintiff also failed to mention any kicks to the groin or buttocks in his own use of force statements, and he omitted that detail in his testimony during his disciplinary hearing. (Doc. 27-13, Ex. G at 16-17; Doc. 27-15). He also failed to mention kicks to the groin and/or buttocks in his grievance forms. While this Court is cognizant that excessive force cases of this nature often include videotape or other undisputed evidence, rather, in this case the Court is presented with conflicting "he said/ she said" affidavits. However, on the facts presented, the Court finds the evidence so lopsided that summary judgment is appropriate.

The same cannot be said concerning Plaintiff's claims against Tackett and Maynard. All records indicate that Tackett and Maynard were the officers most involved in the altercation. Based on the facts alleged by Plaintiff and supported by Plaintiff's evidence, including the affidavit of inmate Wynn, a reasonable correctional officer would have understood that it is a violation of the Eighth Amendment to maliciously and sadistically

---

[5]The Court listened to the entire disciplinary hearing (Doc. #27, Exh. H) and at no time during the hearing did Plaintiff assert that anyone other than Tackett and Maynard were involved in the incident.

inflict physical punishment upon an inmate based solely upon an inmate's verbal insult. Similarly, a reasonable officer would have understood it is a violation of the Eighth Amendment to use significantly more force than necessary to maintain safety and restore order. Therefore, Defendants Tackett and Maynard cannot be granted qualified immunity at this point. *Accord Kinzer v. Schuckmann,* ___ F. Supp.2d ___, 2012 WL 395493 *8 (S.D. Ohio, Feb. 7, 2012)(genuine issue of material fact existed as to whether police officer acted reasonably in grabbing and twisting arrestee's wrist, because Court required to credit Plaintiff's version on summary judgment notwithstanding perceived "weaknesses" of Plaintiff's claim); *Easley v. Haywood*, 2011 WL 799795 (S.D. Ohio, March 2, 2011)(denying summary judgment to prison correctional officers who allegedly used excessive force on belligerent inmate despite evidence of only two minor abrasions); *Jackson v. Armstrong*, 2008 WL 3876604 (S.D. Ohio, Aug. 20, 2008)(denying summary judgment to corrections officer accused of using his PR 24 on arm of inmate who refused to remove his arm from food hatch, even though only pain and mild redness without swelling noted on Plaintiff's arm).

### b. Plaintiff's Evidence and the Wynn Affidavit

Defendants attack all of the evidence submitted by Plaintiff in response to the motion for summary judgment. As Defendants point out, much of the documentary evidence (mostly Health Services Request forms and an inmate grievance form called a "kite") is not authenticated and/or contains hearsay. While the exhibits are not properly authenticated under Rule 56(c)(2), it is notable that Defendants' argument is limited to procedure; they do not argue that the exhibits are fabricated in any way, or that they are not actually authentic. And as Defendants are well aware, many exceptions exist to the

general proscription against hearsay.  Given the more limited resources of a *pro se* prisoner plaintiff in mounting a defense to summary judgment, the Court declines to exclude the exhibits from consideration at this juncture.

Although most of the exhibits attached to Plaintiff's responsive memorandum provide varying amounts of corroboration for his account, the strongest support is the Wynn affidavit.  As discussed above, the Court agrees that a portion of that affidavit (and Plaintiff's account) is so blatantly contradicted by the record such that it does not provide sufficient evidence to avoid summary judgment.  It is not surprising then, that Defendants expend several pages of their reply brief attacking the whole of the Wynn affidavit.

First, Defendants argue that inmate Wynn's precise description - that Officer Tackett grabbed Plaintiff's handcuffs "[t]wisting the handcuffs around inmate Spencer's wrist...." is "suspiciously close" to the phrasing used by Plaintiff himself.  Defendants suggest that it "strains credibility to believe that...the precise same words or phrases would be used," and that "[t]he logical inference is that Affiant Wynn and Inmate Spencer colluded on the preparation of this affidavit, or more directly, that Wynn was told what to say."  (Doc. 32 at 12).  However, this argument is one that involves issues of credibility that are not easily resolved on summary judgment.[6]

Second, Defendants argue that Wynn's affidavit fails to explain "how he was able to remain and languish in H Corridor for the entire five (5) minute time span that Inmate Spencer contends the beating lasted for."  (Doc. 32 at 12).  Defendants assert that inmates are not permitted to stop while being escorted or while moving from one location to

---

[6]Ironically, it is relatively common for affidavits prepared by counsel to contain similar or nearly identical phrasing.  In other words, the veracity of the content of an affidavit by an eyewitness witness is not necessarily impugned by the use of similar language to describe the same event.

another.[7]  Therefore, Defendants contend that either Plaintiff must be lying as to the length of the incident, or alternatively, Inmate Wynn must be lying as to the length of time he witnessed the incident.  Again, however, Defendants' argument relates to credibility issues that cannot be fully resolved at this stage of the proceedings.

Defendants' third and fourth arguments are similarly unavailing.  Defendants point out that Wynn's affidavit was not signed until thirteen months after the incident, that Inmate Wynn did not testify at the RIB hearing in October 2010, and that none of the inmates in the same group/range as Plaintiff have offered up affidavits in his support.  These issues may be raised at trial, but to disregard Wynn's affidavit in its entirety would require fact-finding that is inappropriate on summary judgment.

Last, Defendants note that both Wynn and Spencer "omit" from their accounts any explicit denial of Defendants' account that Plaintiff instigated the violent incident by attempting to assault/ head butt Officer Tackett.  However, Defendants themselves construe Plaintiff's allegations as claiming that Defendant Tackett's attack on him was "unprovoked."  (Doc. 27 at 12).  This construction of Plaintiff's allegations is the most reasonable, given that the Complaint alleges that "Defendant Dawn Tackett told me to slow down but I kept my normal pace that's when Defendant Dawn Tackett grabbed the handcuffs and twisted them around my wrist taking me down to the floor where she begin [sic] punching me in my face and pulling out her PR-24 hitting me in the top of my head 3 to 4 xs causing my head to burst open and bleed."  (Doc. 3 at 7).  Inmate Wynn similarly describes an incident initiated by Defendant Tackett twisting Plaintiff's handcuffs.    In

---

[7]Defendants offer no evidence to support this assertion, but the Court accepts its veracity for purposes of this motion.

16

response to interrogatories submitted by Plaintiff, Officer Maynard states that he did not observe and does "not know if Inmate Spencer attempted to head strike Officer Tackett prior to me turning and looking" and observing the altercation.  (Doc. 27-4 at Interrogatory 9).  In his response in opposition, Plaintiff also challenges Tackett's version: "Defendant Tackett said that I tried to head strike her [ - ] if I was trying to or wanted to assault her then I would have done it when she pushed me in my back and kicked my foot because my hands was free."  (Doc. 30 at 4).

An allegation of an unprovoked attack on Plaintiff obviously refutes Defendants' allegations that the incident merely involved "reactive" force used to protect Officer Tackett and restore order in response to an assault on Officer Tackett by Plaintiff.  On the record presented, and given the standards applicable on summary judgment, the Court declines to construe the "omission" of an "explicit" denial by Plaintiff and inmate Wynn of Plaintiff's alleged assault as concession that Plaintiff physically initiated the incident.

### c. *De Mimimis* Force and/or Injury

An Eighth Amendment claim requires a prisoner to satisfy both an objective component, which requires the pain that is inflicted to be "sufficiently serious," and a subjective component, which focuses on the state of mind of the prison official.  *See Williams v. Curtin*, 631 F.3d 380,  383 (6th Cir. 2011)(citations omitted).  The Supreme Court has explained that it is unnecessary for an inmate to prove that he suffered from any significant injury requiring medical attention in order to prove the objective component of an Eighth Amendment claim involving cruel and unusual punishment, *see Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010).  Certainly, the extent of injury is one factor to be considered in determining whether the assertion of force "'could plausibly have been

17

thought necessary' in a particular situation." *Id.,* quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986). "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995 (1992). Thus, the Eighth Amendment's "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins*, 130 S. Ct at 1178 (quoting *Hudson*, 503 U.S. at 9). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

As the Supreme Court has explained, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 6-7; *see also Wilkins v. Gaddy,* 130 S. Ct. at 1178-1179 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").

Although Defendants represent Plaintiff's injuries to be minimal in this case,[8] it is the force that was allegedly used by Defendants against Plaintiff on which this Court must focus. Defendants suggest that they are entitled to summary judgment because, even if

---

[8]In response to the motion for summary judgment, Plaintiff has submitted evidence that he complained of headaches and dizziness as a lingering effect of his head injury, despite the relatively minor nature of the appearance of the injury during the examination immediately following the alleged assault. In reply, Defendants have attached additional evidence that Plaintiff suffered from headaches and dizziness years before the incident, and that his symptoms result from his high blood pressure and/or other incidents or conditions and not from the incident that forms the basis of this lawsuit. The extent of Plaintiff's injury presents yet another issue of disputed fact.

inmate Wynn's account is to be believed, "Inmate Spencer has alleged no injuries or damages... other than brief periods of pain."  However, even "brief periods of pain" would entitle Plaintiff to prevail if he can prove that the use of force occurred and that the force used was applied "maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d at 383, quoting *Hudson v. McMillian,* 503 U.S. at 6 (internal quotation marks omitted).  "Courts may consider 'the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted.'" *Id.* at 383 (quoting *Whitley,* 475 U.S. at 321).

As previously discussed, any incidental contact by Tackett while attempting to complete the pat-down search was most certainly *de minimis*.  Similarly, the Court finds that Defendants Stevens and Campbell did not inflict any injury on Plaintiff in violation of the Eighth Amendment, and any physical contact made by those two Defendants was not excessive as a matter of law.  On the other hand, because material issues of fact remain concerning the amount of force applied by Defendants Tackett and Maynard in the second altercation, as well as whether the force was unprovoked or in an attempt to restrain an inmate who had aggressively attacked a corrections officer, this Court cannot verify that the subsequent force was so "*de minimis*" as to fail to demonstrate an Eighth Amendment claim on the record presented.  *Accord Williams v. Curtin*, 631 F.3d 380 (prisoner sufficiently alleged objective component when he alleged malicious use of chemical agent that caused him to suffer from temporary spell of coughing and shortage of oxygen).

### III. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED:**

1. That the Defendants' motion for summary judgment (Doc. 101) be **GRANTED IN PART** and **DENIED IN PART**;

2. That all claims against all Defendants in their official capacities should be **DISMISSED WITH PREJUDICE;**

3. That all claims against Defendants Toland, Campbell, and Stevens, in their individual capacities, as well as all claims against Defendant Tackett concerning the initial contact during the pat-down search, should be **DISMISSED WITH PREJUDICE**;

4. That the motion of Defendants Tackett and Maynard for judgment on the remaining Eighth Amendment claims against them in their individual capacities be **DENIED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FRANK A. SPENCER,                                        Case No. 1:11-cv-142

            Plaintiff,                                         Spiegel, J.
                                                                Bowman, M.J.

        v.

ODRC DIRECTOR ERNIE MOORE, et al.,

            Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).